UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X        Civil Case No.

  KATAWBA DE LA ROSA,

                          Plaintiff,
                                                                                 **COMPLAINT**

          vs.

THE CITY OF NEW YORK, NEW YORK CITY                                              Plaintiff Demands a
EMERGENCY MANAGEMENT, and ZACHARY                                               Trial by Jury
ISCOL, individually,

                          Defendants.
------------------------------------------------------------------------X

      Plaintiff Katawba De La Rosa, by her attorney(s), Erdal Employment Law, hereby

complains of Defendants The City of New York ("the City"), New York City Emergency

Management ("NYCEM"), and Zachary Iscol (collectively, "Defendants") upon information and

belief, as follows:

## NATURE OF CASE

      Plaintiff Katawba De La Rosa complains pursuant to Title VII of the Civil Rights Act of

1964, as codified, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights

Law, Executive Law § 296 *et seq.* ("NYSHRL") and the New York City Human Rights Law, the

Administrative Code of the City of New York, §§ 8-101 *et seq.* ("NYCHRL"), based on the

supplemental jurisdiction of this Court pursuant to United Mine Workers of America v. Gibbs, 383

U.S. 715 (1966) and 28 U.S.C. § 1367 seeking declaratory and injunctive relief and damages to

redress the injuries she suffered as a result of being discriminated against by her employer on the

basis of her race/ethnicity (Hispanic/Latina), color (Black), and sex/gender (female), together with

a hostile work environment, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a federal question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. § 2617; 28 U.S.C. §1331, § 1343 and pendent jurisdiction thereto.

2. This Court also has supplemental jurisdiction under the State and City law of the State of New York.

3. On or about February 22, 2024, Plaintiff submitted a Charge of Discrimination to the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC Charge Number is 520-2024-00710.

4. On or about June 4, 2024, Plaintiff received a Right to Sue Letter from the EEOC for Charge Number 520-2024-00710.

5. Furthermore, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York within ten (10) days of filing, pursuant to New York City Administrative Code § 8-502(c).

6. Accordingly, Plaintiff has or shall have satisfied all administrative prerequisites and is filing this case within the applicable statute of limitations.

7. Venue is proper in this Cour, because Defendant the City of New York is located in the State of New York, County of New York, within the Southern District of New York.

## PARTIES

8. At all times material, Plaintiff was a Hispanic/Latina and African-American/Black female who is a resident of the State of New York, County of Westchester.

9.  At all times material, Defendant the City of New York ("NYC" or "City") was and is a municipal corporation duly organized and existing under the laws of the State of New York with a principal place of business in the County of New York.

10. At all times material, Defendant New York City Emergency Management ("NYCEM") was and is an agency of the City of New York with a principal place of business at 165 Cadman Plaza East, County of Kings, City and State of New York.

11. At all times material, the City of New York and New York City Emergency Management were either a single integrated employer or joint employers of Plaintiff.

12. At all times material, Zachary Iscol was and is the Commissioner of New York City Emergency Management. Iscol held supervisory authority over Plaintiff, and held the power to hire and fire Plaintiff.

13. At all times material, Defendants meet the definition of an employer under all applicable state and local statutes.

## **MATERIAL FACTS**

14. On or about October 24, 2022, Plaintiff began her employment with Defendants as Unit Specialist.

15. In or around January 2023, Plaintiff was promoted to the position of "Infrastructure Program Manager."

16. Throughout her employment, Plaintiff met and, indeed, exceeded Defendants' expectations regarding her job performance.

17. By way of example, Plaintiff played an integral role in plan/protocol writing and TUI-ESF activation.

18. In or around January 31, 2023, Defendants posted **JVN-Job Vacancy Notice (570441)** for the position of Director of Human Capital Management ("HCM").

19. Notably, Plaintiff has a Master's Degree in Human Resources, and therefore considered the Director of HCM position to be an ideal opportunity to use her education, knowledge and expertise in human resources to benefit NYCEM.

20. Accordingly, in or around February 8, 2023, Plaintiff applied for the Director of HCM position, and informed her supervisor, Nicole Payne, that she had applied.

21. Over the course of the next two (2) months, Plaintiff followed up with Defendants as to the status of her application and whether she would be interviewed for the position.

22. During that period, Defendants failed to advise Plaintiff of the status of her application.

23. Defendants only informed Plaintiff that there was no prerequisite regarding the number of years that an applicant had to be employed by the NYCEM to be considered for the Director of HCM position.

24. On or about April 21, 2023, Plaintiff's supervisor, Nicole Graves, followed up with NYCEM's Human Resources Department, and inquired as to when Plaintiff would be interviewed for the Director of HCM role.

25. Defendants also failed to respond to Ms. Graves's inquiries related to Plaintiff's application for the Director of HCM role.

26. Finally, on or about June 9, 2023, Plaintiff discussed her application with Johanna Conroy, NYCEM's Assistant Commissioner, Interagency Coordination, and a Caucasian, and requested clarity regarding the application process.

27. Plaintiff also advised Assistant Commissioner Conroy that she had the necessary qualifications, including but not limited to an advanced degree, experience with proven results for

creating a recruitment strategy, providing professional development, and managing employee benefits.

28. Assistant Commissioner Conroy responded that while Plaintiff had substantial qualifications, she did not qualify for the Director of HCM role because she was not at NYCEM for more than two (2) years.

29. According to Assistant Commissioner Conroy, NYCEM's policy was to not promote or provide salary increases to employees who are employed at the agency for less than two (2) years.

30. Plaintiff was shocked and dismayed by this response, especially considering that a colleague of hers, Henry Cornejo, a male, was promoted from Unit Specialist to Program Manager and given a salary increase, despite being employed with NYCEM since January 2022 – **less than the two (2) year requirement as emphasized by Assistant Commissioner Conroy.**

31. In fact, Plaintiff and her supervisor, Ms. Graves, were part of the panel that interviewed and selected Mr. Cornejo for the Program Manager role.

32. Plaintiff selected Mr. Cornejo for, among other things, his tenacity and confidence in applying for the position.

33. The following day, on or about June 10, 2023, Plaintiff wrote a letter to Defendant NYCEM Commissioner Zachary Iscol to request a fair and equitable employment opportunity with respect to the Director of HCM position.

34. In the letter, sent by email and certified mail, return receipt requested, Plaintiff advised Defendant Iscol of her application for the Director of HCM role, that she was initially told that there was no two (2) year requirement for the position, then being told by Assistant Commissioner Conroy that there **was** a two (2) year requirement, thereby being denied the opportunity to be

considered for the position, despite Mr. Cornejo being promoted with approximately fourteen (14) months in NYCEM.

35. Plaintiff concluded the letter by requesting that Defendant Iscol assist her in being considered for the Director of HCM position, especially considering Mr. Cornejo's recent promotion and salary increase.

36. On or about June 14, 2023, Defendant Iscol responded via email, acknowledging receipt of her "fair and equitable opportunity" letter and advising that the matter would be handled by Tori Ajibade, NYCEM's Chief Equity and Diversity Officer, to address Plaintiff's concerns.

37. On or about June 23, 2023, Plaintiff met with Ms. Ajibade via Microsoft Teams.

38. Pointedly, on or about June 26, 2023 and June 27, 2023, Plaintiff was part of an interview panel for NYCEM's Transportation and Infrastructure Program Manager position. Among the candidates was "I.X.", who was ultimately selected.

39. Strangely, during this period, Beth Pappas, NYCEM's Chief Human Capital Officer, would periodically ask Plaintiff to meet her (Ms. Pappas) for coffee, outside of NYCEM's administrative building.

40. Plaintiff continually refused to meet with Ms. Pappas, found these requests to be extremely odd, considering that Plaintiff was addressing her concerns and seeking clarity within NYSEM, and Ms. Pappas never explained the purpose for these meetings over coffee.

*Plaintiff is Subjected to Race/Color Discrimination by her Peer.*

41. During a Microsoft Teams call on or about May 31, 2023, Henry Cornejo called Plaintiff **"combative,"** without any merit or basis in fact.

42. Plaintiff and her supervisor, Ms. Graves, immediately took exception to the use of the word "combative," and explained to Mr. Cornejo how Latina and/or Black women are maligned,

undermined, disregarded, and underrepresented in the workplace, and that words such as "combative," "angry," "aggressive," "abusive," or "difficult to work with" are often based on underlying prejudice and discrimination.

43. Plaintiff and Ms. Graves requested that Mr. Cornejo research how terms such as "combative" are code words for discrimination, and that he immediately cease and desist from using such terms to describe women of color, especially his colleagues.

44. During the June 9, 2023, call with Assistant Commissioner Conroy, Plaintiff was told that she (Plaintiff) expressed herself in emails and other electronic communications with "anger and abusive content."

45. Assistant Commissioner Conroy requested that Plaintiff provide her (Conroy) with drafts of her emails to essentially filter them for what allegedly contained "abusive content."

46. When Plaintiff asked for examples of emails and other electronic communications that consisted of "anger" and "abusive content," **Assistant Commissioner Conroy could not provide any.**

47. On or about June 13, 2023, at approximately 4:30 p.m., Beth Pappas, NYCEM's Chief Human Capital Officer, and a Caucasian female, called Plaintiff and explained that **Plaintiff's Masters Degree in Human Resources and substantial experience in human resources departments did not qualify her (Plaintiff) for the Director of HCM position**, and therefore she felt that an interview was not necessary.

48. Ms. Pappas's statement was odd to Plaintiff, because upon information and belief, Ms. Pappas did not have any Human Resources experience or credentials prior to being named Human Capital Manager.

49. Upon information and belief, these incidents mirrored past and current discriminatory experiences of Latina/Black women who worked for NYCEM, and it was discouraging to know that these discriminatory practices continued with Plaintiff.

50. Upon information and belief, Henry Cornejo treats females with disdain, and enjoy gaslighting, humiliating, and mistreating females.

51. On or about August 4, 2023, Plaintiff, emailed Heather Roiter, Deputy Commissioner, Risk Reduction and Recovery, and Assistant Commissioner Conroy outlining in great detail the previously reported complaints regarding Mr. Cornejo's behavior contrary to NYCEM's Code of Conduct spanning over several months, including but not limited to, name-calling combined with using words associated with isolating woman of color; making derogatory comments about Plaintiff to outside vendors; promoting a hostile work environment; disparaging Plaintiff by soliciting/recruiting NYCEM team members to falsely compose erroneous complaints about her; falsely sharing with Plaintiff's team that she had never contributed and wanted nothing to do with the Asylum Seeker Operation.

52. On or about August 7, 2023, Assistant Commissioner Conroy sent an email in response to Plaintiff's August 4, 2023 email copying all original parties and adding Ms. Pappas to the chain.

53. Assistant Commissioner Conroy's response to Plaintiff's numerous complaints, which included Mr. Cornejo's false representation of Plaintiff's lack of contribution to the Asylum Seeker Operation was to remove Plaintiff from the Asylum Seeker Operation and all related work.

54. Assistant Commissioner Conroy's decision continued Defendants' conduct to punish Plaintiff (the victim) and in turn, sent a message supporting Mr. Cornejo's discriminatory and harassing behavior.

55. Furthermore, Assistant Commissioner Conroy emphasized in her August 7, 2023 email that Plaintiff cease sending emails, Team messages, or messages of any kind with any further issues and only provided one avenue of recourse - lodging a formal complaint with Tori Ajibade.

56. In essence, Assistant Commissioner Conroy was silencing Plaintiff (the victim) from reporting the discriminatory and racially harassing statements and conduct.

57. Ironically, in this August 7, 2023 email, Assistant Commissioner Conroy ordered Plaintiff to "provide contact information for anyone who was part of or witness to any of these incidents." However, Ms. Conroy herself had discriminated against Plaintiff.

58. On August 7, 2023, Plaintiff forwarded Assistant Commissioner Conroy's email to Ms. Ajibade informing her that Ms. Conroy had engaged in retaliation for her (Plaintiff's) complaints by removing her (Plaintiff) from assignments, asking for witnesses, and inferring that being a victim does not promote a civil workplace and that while she is still afraid to file a formal complaint she will do.

59. On or around August 8, 2023, Plaintiff filed an EEO complaint naming Ms. Pappas, Assistant Commissioner Conroy, and Henry Cornejo as individuals engaging in discrimination against Plaintiff due to her race, color, age, and gender.

60. Upon information and belief, after filing an EEO Complaint, Plaintiff's workload was unfairly increased to a point where it was impossible for Plaintiff to meet Defendants' job expectations.

61. Accordingly, Plaintiff's workload, as compared to her peers, was disproportionately and unjustly elevated on the basis of her race/ethnicity, color, and sex/gender.

62. These actions, in the aggregate, reinforced Plaintiff's belief that she was being subjected to ongoing retaliation in response to filing a formal EEO Complaint.

63. On or about September 26, 2023, Defendants wrongfully terminated Plaintiff due to sex/gender discrimination and retaliated against Plaintiff for complaining about discrimination against her on the basis of her race/ethnicity (Hispanic/Latina), color (Black) and sex/gender (female).

64. On or about October 9, 2023, after Defendants wrongfully terminated Plaintiff, she filed a an application for unemployment insurance benefits.

65. On or about December 15, 2023, Plaintiff received a letter from the New York Department of Labor ("NYSDOL") indicating that her unemployment claim was accepted, despite Defendants' attempt to challenge Plaintiff's unemployment application.

66. Pointedly, Defendants' attempt was denied in part because they did not "provide specific details, witness statements, policies, or documentation" supporting their allegations.

67. Nevertheless, Defendants continued to retaliate against Plaintiff even after her termination.

68. Specifically, on or about January 18, 2024, Plaintiff received correspondence from the NYSDOL, Unemployment Insurance Division that on or about January 8, 2024, Defendants "wishes to appeal the determination dated December 15, 2023 which allows benefits to [Plaintiff]" while continuing to make unsupported allegations as to their rationale behind Plaintiff's termination.

69. To date, Defendants only provided Ms. Pappas's communication from October 23, 2023 to contest Plaintiff's request for unemployment benefits.

70. As previously noted, Ms. Pappas was one of the named individuals in the original EEO Complaint who engaged in discrimination and harassment toward Plaintiff.

71. Even more egregiously, Defendants challenged Plaintiff's unemployment benefits – despite it already being accepted by the NYSDOL Unemployment Insurance Division – on the basis of Plaintiff's "disruptive and emotional outbursts."

72. Following a hearing before the Unemployment Insurance Appeal Board, Administrative Law Judge Section (Case No. 024-01248), Administrative Law Judge Michelle Burrowes's Decision sustained the initial determination that Plaintiff was entitled to unemployment benefits.

73. Administrative Law Judge Burrowes found, among other things, the following:

> [Defendants'] witness, a Chief Operating Officer, acknowledged that he had no first-hand knowledge concerning any warnings to [Plaintiff]. Moreover, [Plaintiff] presented documentary evidence that shows her Acting Director recommended her as the team's representative for a proposed federal project, noting that [Plaintiff] would be a "great fit" as she works well with stakeholders. It seems unlikely that [Plaintiff's] Director would recommend her for this role if she had a history of engaging in [disruptive and inappropriate] conduct.

74. The above are just some of the examples of the unlawful discriminatory and retaliatory conduct to which Defendants subjected Plaintiff.

75. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

76. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments including extreme anxiety and severe depression.

77. As a result of Defendants' unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that she is having difficulty eating and sleeping.

78. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to her professional reputation.

79. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any pre-existing condition.

80. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

81. Defendants' conduct constitutes a continuing violation. Plaintiff claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

**AS A FIRST CAUSE OF ACTION:**
**DISCRIMINATION UNDER TITLE VII**
**(As against Defendants City of New York and**
**New York City Emergency Management)**

82. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

83.  Title VII states in relevant part as follows:

"SEC. 2000e-2. [Section 703] (a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

84. Defendants City of New York and New York City Emergency Management engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her sex/gender, ethnicity, and race/color.

85. Defendants City of New York and New York City Emergency Management violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION:**
**RETALIATION UNDER TITLE VII**
**(As against Defendants City of New York and**
**New York City Emergency Management**

86. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

87. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

88. Defendants City of New York and New York City Emergency Management engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to their unlawful employment practices.

89. Defendants City of New York and New York City Emergency Management violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION: DISCRIMINATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

90. Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

91. The Administrative Code of the City of New York § 8-107(1) provides that "It shall be an unlawful discriminatory practice: '(a) For an employer or employee or agent thereof, because of the actual or perceived…race…[or] gender…of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.'"

92. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code, Title 8, § 8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff on the basis of her race (and/or gender, along with creating a hostile work environment.

93. Plaintiff suffered damages as a result, in an amount to be determined at trial.

<div align="center">

**AS A FOURTH CAUSE OF ACTION: RETALIATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(Against All Defendants)**

</div>

94. Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

95. New York City Administrative Code Title 8, § 8-107(7) provides that:

> "It shall be an unlawful employment practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

96. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff, including, but not limited to, terminating Plaintiff's employment because she opposed Defendants' unlawful employment practices.

97. Defendants City of New York and New York City Emergency Management violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION: SUPERVISOR LIABILITY
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(Against All Defendants)**

98. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

99. New York City Administrative Code Title 8, § 8-107(13), Employer liability for discriminatory conduct by employee, agent or independent contractor.

a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisor responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known

by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

100. Defendants City of New York and New York City Emergency Management violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION: INTERFERENCE WITH PROTECTED RIGHTS UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

101. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

102. New York City Administrative Code Title 8, § 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

103. Defendants City of New York and New York City Emergency Management violated the above and Plaintiff suffered numerous damages as a result.

**AS A SEVENTH CAUSE OF ACTION: DISCRIMINATION UNDER STATE LAW**
**(Against All Defendants)**

104. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

105. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice '(a) For an employer or licensing agency, because of an individual's…race…[or] sex…, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

106. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff on the basis of her race and sex, together with creating a hostile work environment.

107. Plaintiff herby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

108. Defendants City of New York and New York City Emergency Management violated the above and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION:**
**RETALIATION UNDER STATE LAW**
**(Against All Defendants)**

109. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

110. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

111. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

112. Defendants City of New York and New York City Emergency Management violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION:**
**AIDING AND ABETTING UNDER STATE LAW**
**(Against All Defendants)**

113. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

114. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

115. Each of the named Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

116. Plaintiff suffered damages as a result, in an amount to be determined at trial.

**AS AN TENTH CAUSE OF ACTION:**
**BREACH OF CONTRACT**

117. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

118. As set forth in detail above and herein, Plaintiff and Defendants duly entered into a valid and enforceable employment agreement, which required Defendants to provide Plaintiff with consideration in the form of commissions.

119. Based upon the aforementioned facts, Plaintiff performed her duties under the employment agreement in a satisfactory manner for the benefit of Defendants.

120. Based upon the aforementioned facts, Defendants breached the employment agreement and are liable to Plaintiff for breach of contract pursuant to New York State common law.

121. Defendants City of New York and New York City Emergency Management violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendants:

A.      Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.*, the New York City Administrative Code Title 8, § 8-107 *et seq.* and the New York Executive Law, § 296 *et seq.*, and that Defendants harassed and discriminated against Plaintiff on the basis of her race and sex/gender, along with hostile work environment, aiding and abetting, and retaliation;

B.      Declaring that Defendants unlawfully discharged Plaintiff;

C.      Awarding damages to Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful termination of employment, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D.      Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

E.      Awarding Plaintiff punitive damages;

F.      Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.      Awarding Plaintiff such other and further relief as this Honorable Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees, costs, and disbursement of this action; and for such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:  August 23, 2024

<div style="margin-left: 50%;">

**ERDAL EMPLOYMENT LAW, LLC**
Attorney(s) for Plaintiff
Katawba De La Rosa


By: /s/ Erdal Turnacioglu
Erdal Turnacioglu, Esq.

</div>